THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHNATHAN TOLBERT, Defendant-Appellant.

First District (3rd Division)   No. 62381

Opinion filed June 28, 1978.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Mary Ellen Cagney, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Johnathan Tolbert, the defendant, was indicted for murder along with three co-defendants, Edwin Anderson, Willie J. Williams and Sherman Smothers. (Ill. Rev. Stat. 1971, ch. 38, par. 9—1.) In a trial without a jury Johnathan Tolbert was found guilty of murder and the three co-defendants were found not guilty. Tolbert was committed to the Department of Corrections for a period not less than 20 years nor more than 30 years.

On appeal the defendant asserts that the judgment must be reversed because it is based upon identification testimony that had no independent basis and because the conviction of the defendant was inconsistent with the acquittal of the three co-defendants. In the alternative, the defendant seeks to have the sentence reduced to the minimum.

This incident took place on May 5, 1973, at approximately 8:30 p.m. At that time Clint Sanders, Kent Richardson, Johnnie Johnson, John Collier, and the decedent, Dennis Henderson, were walking south on the east side

of Honore Street approaching 65th Street in the city of Chicago. Only Clint Sanders and Kent Richardson testified for the State. The defendants did not testify in their own behalf. Brenda Kelly testified as an alibi witness for Anderson and Williams.

Clint Sanders stated that when he was about two houses from the corner of 65th Street, Tolbert came from around the corner on the west side of the street. Tolbert said, "Hey, Hustler." He started shooting and the witness ran east through a gangway. He did not stop running until he reached home which was about six blocks away. After Tolbert started shooting Sanders also saw other shots being fired from the corner where there were four people. At the police station later that evening he viewed a lineup and identified Tolbert and the three co-defendants. He testified that he had known all of them for about a year prior to the occurrence.

Kent Richardson testified that Tolbert jumped from around the corner hollering "Hustler love." The witness and the others kept approaching the corner and then Tolbert "jumped back and started firing with the other three." There were too many shots fired to be counted. The witness ran east on 65th Street along with Johnson and the decedent, Henderson. About 10 yards east of Honore Street on 65th Street the decedent called out saying that he had been hit. He then fell. His whole left side was bleeding. On cross-examination Richardson testified that he did not see anyone other than Tolbert until after Tolbert came back and started firing. There were about six or seven people on the corner and he recognized four of them. Tolbert fired the first shot. Immediately after those shots were fired Richardson began running. He did not look back to see who among the six or seven people were shooting at him. These other people were only in view a couple of seconds. He did not know who was shooting what gun, but he knew Tolbert had a gun. Later on at the police station he viewed a lineup and identified the four defendants. He knew them prior to the date of the shooting. Richardson had been with the decedent since about 6 p.m. and he was unaware of the decedent having had alcoholic beverages during that time. It was dark and drizzling.

The cause of death was a bullet wound of the chest, the lung, the heart and the liver. It was also stipulated the decedent's blood showed 83 milligrams percent ethanol.

Brenda Kelly testified as an alibi witness for Williams and Anderson. She stated she lived in the second floor apartment on the corner of 65th and Honore and that Williams and Anderson, along with her child and her girlfriend, were in her apartment at the time of the shooting. She could not estimate the number of shots that were fired; she just saw the sparks.

In contesting the identification Tolbert emphasizes the fact that it was dark and raining and that the witnesses only had a brief opportunity to view the people doing the shooting. Also, both of the witnesses identified

74

the four defendants by name or nickname at the station while they were in the presence of one another, but neither gave physical descriptions to the police. To impeach the witnesses' credibility he notes that Richardson did not know anything at all about the drinking of the decedent although the blood contained 83 milligrams of ethanol.

■■■ The testimony of both Sanders and Richardson with regard to Tolbert was explicit and consistent. Their attention was called to Tolbert when he appeared and yelled "Hey, Hustler" or "Hustler love." Tolbert started the shooting. Tolbert was known to both of the witnesses. The assessment of the credibility of those witnesses, their opportunity to observe and any impeachment of Richardson with regard to the amount of ethanol found in the blood of the decedent is for the trial court. A reviewing court will not substitute its judgment for that of the trial court even if the evidence regarding the material facts is conflicting or irreconcilable unless it can be said that the trial court's judgment is found to rest on doubtful, improbable or unsatisfactory evidence, or clearly insufficient evidence. (*People v. Clemons* (1962), 26 Ill. 2d 481, 187 N.E.2d 260.) We do not find the evidence here to be improbable, unsatisfactory or insufficient. We will not disturb the finding of the trial court.

In a similar vein the defendant argues that both Sanders and Richardson testified against the four original defendants by name and nickname but the court only found Tolbert guilty. The defendant reasons that the trial court therefore rejected their testimony because the court concluded that they did not have sufficient time or opportunity under the stress of circumstances and the lighting conditions to identify the people who fired the shots. The defendant concludes that if the witnesses were lying, mistaken or really conjecturing with regard to the defendants who were found not guilty, that same testimony naming Tolbert must be rejected. The defendant relies on the cases of *People v. Griffin* (1967), 88 Ill. App. 2d 28, 232 N.E.2d 216, and *People v. Beasley* (1976), 41 Ill. App. 3d 550, 353 N.E.2d 699.

■■ In *Griffin* the trial court dismissed one co-defendant but found the other guilty. The appellate court in reversing noted that there was "no plausible reconstruction of the State's case which would support the finding of not guilty" as to one defendant and guilty as to the other. In *Beasley* the appellate court similarly reversed the conviction of one of the defendants where the other had been found not guilty by the trial court on the basis that it had reached "inconsistent conclusions on identical evidence of guilt." (*Beasley*, at 555.) The case at bar does not present identical evidence against all the defendants. Sanders and Richardson both stated that Tolbert had a gun. Neither Sanders nor Richardson is specific in placing a gun in the hands of any of the co-defendants. As we

stated before, their attention was called to Tolbert when he yelled. The witnesses had more of an opportunity to observe Tolbert because after he began firing they began to run and their opportunity to identify the actions of the co-defendants with regard to the shooting is not as certain as their ability to identify the actions of Tolbert. Richardson testified that he did not know who was doing the shooting after the shooting started because he did not turn around. The finding of the trial court against Tolbert must be affirmed.

■■ The defendant asserts that because he was 15 years old at the time of the shooting and had no previous criminal background, in order to facilitate the rehabilitative purposes of sentencing his sentence must be reduced to the minimum provided by law. We do not believe that the trial court abused its discretion in sentencing the defendant. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) The trial judge was in a superior position to observe the demeanor of the defendant in light of the seriousness of the offense of murder and the absence of any mitigating factors which might have excused his conduct.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and SIMON, JJ., concur.